William McKinney, Appellee, v. Central Iowa Fuel Company
et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Industrial
Commissioner—Finality of Finding. The courts *must* accept as true
that part of conflicting testimony which supports the finding of the
industrial commissioner on a material issue of fact. (See Book of
Anno., Vol. 1, Sec. 1452.)

Headnote 1:    Workmen's Compensation Acts, C. J. p. 123.

Headnote 1:    L. R. A. 1917D, 188; 28 R. C. L. 828.

*Appeal from Lucas District Court.*—E. S. Wells, Judge.

October 19, 1926.

This is a workmen's compensation case, wherein the indus-
trial commissioner awarded compensation. This award was con-
firmed in the district court. From such order by the district
court, the defendants have appealed.—*Affirmed.*

*Mabry & Mabry,* for appellants.

*Clarkson & Huebner,* for appellee.

Evans, J.—The workman alleged to have been injured was
William McKinney, who instituted this proceeding in his life-
time. The defendant the Central Iowa Fuel Company was the
employer, and the other defendant was the insurer. The alleged
injury occurred on March 13, 1924. On the following day a
surgical operation was performed upon the plaintiff, from the
effects of which he never recovered. He died pending the pro-
ceedings, on February 17, 1925. A few days before his death,
his deposition was taken, and this was used in evidence at the
hearing before the commissioner. After his death, his widow
intervened in the action, and prosecuted the same to a final
hearing. The following from the deposition of the deceased
workman will indicate the general nature of the claim made in
his behalf:

"I was working for Central Iowa Fuel Company, and had been with them about four years. I sustained an injury while working for the company when I was making rollers, and had one on my arm, a good big-sized 8-foot bar; and just as I went to raise it up, to throw it over on the sawrig, it caught on the saw, and then caught me right across the abdomen. It was a circular saw, located outside of the building, and operated by steam, and was used to saw 8-foot bars off, which were then taken inside and lathed. The average length of these bars was 8 or 9 feet, and anywheres from 6 to 8 or 9 inches thick; and these bars were cut by the circular saw to a length of about 22 inches. There was a frame on the saw, about 3½ feet high, on which the bar was laid, and then just pushed into the saw. On the day of my injury, I was cutting these bars into 22-inch pieces, and at the time I got hurt, I was lifting a bar to put it on the frame to cut it off. I had hold of the bar about the middle."

"Q. What was it that caused the bar to strike you in the abdomen, you spoke of?

"Mr. Mabry: Well, now, that is objected to as leading and suggestive, and assuming that the bar struck him in the abdomen.

"A. When I lifted the bar upon the frame, it hit the corner of the frame, and gouged me right in the abdomen. I couldn't just exactly say what part of the 8-foot bar hit the frame, but I think it must have been about the middle, because that is where I was lifting on it. The saw was running, but the bar didn't come in contact with the saw. I figure, the bar weighed anyway 200—150 pounds. I was lifting it alone, and it was all I could do to handle it. I had the bar up on my arm, and threw it up on the saw frame, and it hit the corner of frame and bounced back, catching me across the abdomen about 5 inches below the navel, and a little to the right. Was operated upon afterwards. At the time it struck me, I experienced plenty of pain, and it was severe. I continued working for a little while, then went home and to Albia. I did not go home until an hour and a half after the bar struck me, and that was before the blood started coming. After the bar struck, I stopped work for about five minutes, and then went back to work. The pain continued from the time the bar struck me, and increased in severity. Before I went home, I started bleeding a lot of blood, and must have bled

a half pint or more, because I bled all time from that on until I got to Albia. I didn't pass a lot of blood before I started from the mines,—probably 4 or 5 ounces.''

On the day following the alleged injury, Mr. McKinney went to the hospital at Albia and submitted to an operation upon the urinary bladder. This was found to be full of blood and blood clots, which were removed by the surgeon, and a drainage established. According to the operating surgeon, infection resulted in the bladder, and extended therefrom to the kidneys. This infection resulted in abscesses in the kidneys, which completely destroyed them; and this was the immediate cause of death.

The major contention of the appellants is that the evidence, when fairly considered, does not disclose that McKinney suffered any actual personal injury; and that, if he suffered any blow at all, it could not have sustained any causal relation to McKinney's condition as it was found by the surgeon on March 14th. Appellants present a plausible argument on the general merits of their contention. But it is predicated upon evidence and circumstances contradictory to the testimony of the claimant. In that respect, the argument of the appellants is of less aid to us than it would have been if it had been predicated wholly upon the testimony most favorable to the support of the claim. It is true that there were no external evidences of injury. No contusions were found upon the skin or upon the muscles, but the testimony of the surgeon was that the internal injury could have been sustained through traumatic causes without any external contusion. If we assume the truth of the evidence of the claimant, it was clearly sufficient to establish the fact of injury. The industrial commissioner having accepted it as true, in the light of all the circumstances appearing in the record, such evidence becomes conclusive upon us. On the question of the causal relation between the trauma and the internal conditions found by the surgeon, such surgeon testified that a traumatic cause would explain the condition that he found, and that he could find no other apparent cause which could account for the same. The internal condition of the bladder was not chronic, but was recent and acute. His testimony also attributed the fatal abscesses in the kidneys to infection from the bladder and from the surgical wound made therein. This opinion was sustained by that of

other surgeons. We are not at liberty to accept contradictory opinions of other experts in order to reject the finding of the commissioner.

It is earnestly argued by appellants that the claimant had been suffering from kidney disease for several years, and that he had passed blood at various times prior to such alleged injury. Upon this hypothesis of fact, it is argued that the claimant died solely as the result of disease from which he had suffered for many years before the injury. The fault of this argument is that this also is predicated upon evidence which is contradictory to the testimony of the claimant himself. It avails nothing here to array evidence against evidence. We must accept as true the evidence which supports the finding of the commissioner. Under this rule, this record is quite conclusive against the appellants, and we would not be justified in discussing the pros and cons of conflicting evidence. Sufficient to say that the record will not justify our interference with the finding below.

The order of the district court is, accordingly,—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.